UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

SUNSET GARDEN OF RIDGEWOOD, INC., and
INDALESIO TELLEZ,

           *Plaintiffs*,                               Case No.

                                                                  COMPLAINT  v.

THE CITY OF NEW YORK, NYC DEP'T OF PARKS
AND RECREATION, NYC PARKS GREENTHUMB,
and CARLOS MARTINEZ, CHIEF OF STAFF OF
NYC PARKS GREENTHUMB

           *Defendants*.

------------------------------------------------------------------------ X

Plaintiffs Sunset Garden of Ridgewood, Inc. and Indalesio Tellez, by their attorney Jonathan Wallace, bring this action against Defendants The City of New York, NYC Dep't of Parks and Recreation, NYC Parks GreenThumb, and Carlos Martinez, the Chief of Staff of NYC Parks Greenthumb, and for their Complaint, allege as follows:

**INTRODUCTION**

1. This action seeks redress for a targeted, discriminatory, and retaliatory campaign by the City of New York and its agencies to suppress the protected speech of Plaintiffs and dismantle a vital community sanctuary because of its Queer, Trans, Black, Indigenous, and People of Color ("QTBIPOC")-affirming identity. Acting under color of state law, Defendants have weaponized

their administrative rules, engaged in selective enforcement, and demanded censorship, culminating in the termination of the Garden's license.

2. Defendants' actions constitute egregious viewpoint discrimination, penalizing Plaintiffs for expressing messages of QTBIPOC affirmation and anti-discrimination. The First Amendment does not permit the government to silence disfavored speech, especially on matters of public concern. "The government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

3. This case challenges Defendants' unconstitutional conduct, which violates the First and Fourteenth Amendments to the United States Constitution; Article I, Section 8 of the New York State Constitution; and the New York City Human Rights Law. Plaintiffs seek declaratory and injunctive relief to restore their license and protect their community, as well as damages for the profound harms they have suffered.

## PARTIES

4. Plaintiff **SUNSET GARDEN OF RIDGEWOOD, INC.** ("the Garden") is a not-for-profit corporation organized under the laws of the State of New York. The Garden operates as a community garden in Ridgewood, Queens, New York, under a license from Defendant NYC Parks GreenThumb, serving as a cultural sanctuary dedicated to fostering community and expression for all New Yorkers, particularly for its QTBIPOC members who face harassment and discrimination elsewhere.

5. Plaintiff **INDALESIO TELLEZ** (they/them) is an individual residing in the State of New York and is a lead gardener at the Garden. Plaintiff Tellez is a member of protected classes who has been targeted by Defendants' discriminatory and retaliatory actions because of their gender identity, sexual orientation, race, and protected speech.

6. Defendant **THE CITY OF NEW YORK** is a municipal corporation organized under the laws of the State of New York, responsible for overseeing its agencies, including Defendants NYC Dep't of Parks and Recreation and NYC Parks GreenThumb.

7. Defendant **NYC DEP'T OF PARKS AND RECREATION** ("NYC Parks") is a municipal agency of the City of New York responsible for maintaining and regulating public parks and community gardens within the City.

8. Defendant **NYC PARKS GREENTHUMB** ("GreenThumb") is a division of NYC Parks that oversees and licenses approximately 550 community gardens throughout New York City, including the Garden. Defendants NYC Parks and GreenThumb acted at all relevant times under the authority and policy of Defendant The City of New York.

9. Defendant **CARLOS MARTINEZ** is Chief of Staff of GreenThumb, and acted at all relevant times under the authority and policy of Defendant The City of New York.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the First and Fourteenth Amendments to the United States

Constitution and is brought pursuant to 42 U.S.C. § 1983.

11. This Court has supplemental jurisdiction over Plaintiffs' state and local law claims pursuant to 28 U.S.C. § 1367, as these claims arise from the same common nucleus of operative fact as the federal claims and form part of the same case or controversy.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the Garden is located in Ridgewood, Queens, New York, and a substantial part of the events and omissions giving rise to the claims occurred within the Eastern District of New York.

## FACTUAL ALLEGATIONS

13. The Garden has, for years, served as a vital community space dedicated to "cultivating radical joy and resilience," particularly for its QTBIPOC members who often face discrimination and marginalization elsewhere. This mission is expressed through gardening, art, and the establishment of "Community Values" designed to ensure a protective, anti-harassment environment.

14. In or around September 2024, Defendants began a targeted campaign of harassment and selective enforcement against the Garden. This campaign was not motivated by a neutral concern for administrative rules, but was instigated by complaints from a third party who objected to the Garden's QTBIPOC-affirming identity—a person a GreenThumb Director would later admit in writing was a "transphobe."

15. GreenThumb Director of Community Engagement Alex Munoz explicitly confirmed the

City's discriminatory motive and shifting standards in an April 23, 2025, text message, apologizing to Garden leaders "for everything. For the changing requirements, the unfair policies, for empowering a transphobe…"

16. Defendants' campaign attacked two core aspects of the Garden's speech and expressive identity: its "Community Values" and a small memorial to a revered transgender activist.

17. **The "Community Values":** Defendants attacked the Garden's "Community Values"—which are protective covenants designed to ensure a space free of racism, sexism, transphobia, and other forms of hate—falsely characterizing them as an impermissible "ideological litmus test." Defendants demanded Plaintiffs censor this anti-discrimination language under threat of license termination.

18. **The Cecilia Gentili Memorial:** In November 2024, Plaintiffs installed a small (approx. 3 x 3.5 ft) memorial altar to Cecilia Gentili, a revered transgender Latina activist. Despite its modest size, Defendants, spurred by external complaints, mischaracterized the Memorial as an "unauthorized permanent art installation" subject to an onerous approval process.

19. This enforcement was transparently selective and pretextual. Defendants took no action against a much larger (approx. 7.5 x 5 ft) unlicensed, brightly painted art installation in the very same Garden that did not have an explicit QTBIPOC-affirming message.

20. The selective enforcement was further confirmed by GreenThumb Chief of Staff Carlos Martinez, who admitted in a recorded meeting on or about April 11, 2025, that the agency routinely "turn[s] a blind eye" to such art and memorials in other gardens, acknowledging them

as "part of the vibrancy of gardens."

21. As part of its retaliatory campaign, the City also interfered with Plaintiffs' expressive activities outside the Garden. In April 2025, a panel on "Cultivating Queer Community in Growing Spaces" at the City's own "GrowTogether Conference" was canceled shortly after Plaintiff Tellez was invited to speak, due to Parks suddenly "micromanaging" the panel after Tellez confirmed they would speak.

22. The City's actions emboldened a campaign of public vilification and private intimidation against Plaintiffs. Following a disparaging article in the *New York Post* amplified by the City's actions, the Garden was targeted with violent online threats, including calls to firebomb its members and destroy the garden with poison. On September 22, 2024, the day after the article, six white men entered the Garden and aggressively interrogated and menaced two immigrant stewards of color.

23. Another *New York Post* article emboldened by the City's harassment, from Saturday July 25th, spurred yet more Islamophobia and transphobia, including death threats. One commenter said "Table cloth heads" (an Islamophobic slur) "and sarin gas" (a highly toxic nerve gas) "go together." Commenter "Real G" wrote "Weed killer will stop the Moos lum festation," (meaning 'Muslim infestation', trying to get around the Post's hate speech filter). That commenter also wrote "apply some powerful weed killer and problem solved (directly upon the Savagastinians)" (referring to 'Palestinians' as 'savages', a common slur against Indigenous Peoples). Another comment said "You know what I like? Gasoline and matches. It's great for removing weeds." Other commenters disparaged the garden's trans members, including through a dehumanizing

comment referring to a pictured garden member as "an It."

24. On May 5, 2025, Defendants terminated the Garden's license, explicitly citing the same pretexts they had cultivated for months: the "Unauthorized permanent art installation" and Plaintiffs' refusal to abandon their community-protective principles.

## FIRST CLAIM FOR RELIEF

**(Violation of the First Amendment – Viewpoint Discrimination, Retaliation, and Unconstitutional Conditions – 42 U.S.C. § 1983)**

25. Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs.

26. The First Amendment, applied to Defendants through the Fourteenth Amendment, protects Plaintiffs' rights to freedom of speech and association against governmental interference. Defendants, acting under color of state law, have violated these fundamental rights.

27. The Cecilia Gentili altar and the Garden's "Community Values" are forms of pure and symbolic speech on matters of public concern, expressing messages of QTBIPOC affirmation, anti-discrimination, and community identity.

28. Defendants' actions—including demanding the removal of the altar, censoring the Community Values, and ultimately terminating the license—were not viewpoint-neutral. They were content-based restrictions specifically targeting Plaintiffs' QTBIPOC-affirming viewpoint. Viewpoint discrimination is "an egregious form of content discrimination and is presumptively unconstitutional." *Mancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (internal quotation omitted).

29. These adverse actions were taken in direct retaliation for Plaintiffs engaging in protected First Amendment activity. Plaintiffs' protected speech, including the altar, was a substantial or motivating factor in Defendants' decision to terminate the license.

30. Defendants further imposed an unconstitutional condition on Plaintiffs by demanding they forfeit their fundamental speech rights as a condition of receiving the government benefit of the garden license. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Furthermore, the plain language of the City's own GreenThumb License Agreement explicitly disclaims City control over and responsibility for the Garden's members and their conduct, stating in no uncertain terms: "All experts, consultants, volunteers, or employees of Licensee... are neither employees of the City nor under contract to the City and *Licensee alone is responsible for their work, direction, compensation, and personal conduct* while engaged under this License. Nothing in this License shall impose *any liability* or duty on the City for acts, omissions, liabilities or obligations of Licensee…" (GreenThumb License Agreement at 14) (emphases added). This provision is a contractual admission that the Garden's members are private actors, not agents of the City.

31. As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered irreparable harm, including the loss of First Amendment freedoms, which "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs have also suffered emotional distress, and the loss of their community sanctuary.

## SECOND CLAIM FOR RELIEF

**(Discrimination in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101** *et seq.***)**

32. Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs.

33. The NYCHRL provides broad protection against discrimination by providers of public accommodation and city agencies based on actual or perceived gender identity, sexual orientation, race, and other protected characteristics. N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(9)(a)(1).

34. Defendants, by selectively enforcing rules, imposing uniquely burdensome requirements, and ultimately terminating the Garden's license, have treated Plaintiffs "less well" than other similarly situated garden groups not identified with or advocating for QTBIPOC communities. *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009).

35. Defendants' actions were motivated, in whole or in part, by discriminatory animus toward Plaintiffs' actual or perceived gender identities, sexual orientation, and/or race, and by the QTBIPOC-affirming nature of their expressive conduct, constituting an unlawful discriminatory practice.

36. As a direct and proximate result of Defendants' discriminatory actions, Plaintiffs have suffered irreparable harm, emotional distress, loss of a vital community space, and other damages compensable under the NYCHRL.

## THIRD CLAIM FOR RELIEF

**(Violation of Freedom of Speech – New York State Constitution, Article I, Section 8)**

37. Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs.

38. Article I, Section 8 of the New York State Constitution provides robust, and at times broader, protection for freedom of speech and expression than its federal counterpart.

39. Defendants' content-based and viewpoint-discriminatory restrictions, prior restraint, and retaliation against Plaintiffs for their protected speech violate Plaintiffs' rights under the New York State Constitution.

40. As a direct and proximate result of these violations, Plaintiffs have suffered irreparable harm, emotional distress, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

A. Declaring that Defendants' actions, policies, and practices complained of herein violate Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, the New York City Human Rights Law, and Article I, Section 8 of the New York State Constitution;

B. Granting preliminary and permanent injunctive relief enjoining Defendants, their officers, agents, and employees from:

   i. Enforcing the termination of the Garden's license and immediately reinstating it;

   ii. Taking any action to evict or remove Plaintiffs or their property, including the Cecilia Gentili Memorial, from the Garden; and

   iii. Engaging in any further acts of discrimination, retaliation, or censorship against Plaintiffs for their protected speech and association;

C. Awarding Plaintiffs compensatory damages in an amount to be determined at trial for the psychological distress and violation of rights suffered;

D. Awarding Plaintiffs punitive damages in an amount to be determined at trial for Defendants' willful, malicious, and reckless disregard of Plaintiffs' rights;

E. Awarding Plaintiffs their reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988 and N.Y.C. Admin. Code § 8-502(g); and

F. Granting such other and further relief as the Court deems just and proper.

Dated: July 31, 2025

                /s/JONATHAN WALLACE
                Jonathan Wallace
                PO #728
                Amagansett, NY 11930
                (917) 359-6234
                Jonathan.wallace80@gmail.com
                Attorney for Plaintiffs