UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

SUNSET GARDEN OF RIDGEWOOD, INC., and
INDALESIO TELLEZ,

                                    Plaintiffs,

                     -against-

THE CITY OF NEW YORK, NYC DEP'T OF PARKS
AND RECREATION, NYC PARKS GREENTHUMB, and
CARLOS MARTINEZ, CHIEF OF STAFF OF NYC
PARKS GREENTHUMB,

                               Defendants.

-------------------------------------------------------------------- X

Index No. 25-cv-04258

Hon. LaShann DeArcy Hall

Magistrate: Hon. Marcia M. Henry


# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

                         MURIEL GOODE-TRUFANT
                         Corporation Counsel of the
                          City of New York
                         *Attorney for Defendants*
                         100 Church Street
                         New York, New York 10007

Date of Service: September 11, 2025

Of Counsel:
Blake Ahlberg
Leslie Spitalnick
Assistant Corporation Counsel
(212) 356-2546 or 2521
bahlberg@law.nyc.gov
lspitaln@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... III

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

STANDARD FOR INJUNCTIVE RELIEF ............................................................. 3

POINT I

PLAINTIFFS' CHALLENGE TO THE
TERMINATION OF THE LICENSE SHOULD BE
DISMISSED BECAUSE PLAINTIFFS' SOLE
AVENUE OF RELIEF IS AN ACTION IN STATE
COURT PURSUANT TO ARTICLE 78 OF THE
CPLR ........................................................................................... 4

POINT II

PARKS' REASONS FOR TERMINATING THE
LICENSE WERE RATIONAL AND UNRELATED
TO PLAINTIFFS' SPEECH OR ANY
PROTECTED CHARACTERISTICS ....................................... 6

A. The Community Agreements .............................................. 6

B. The Monument ................................................................... 9

C. The Conditions Set for the Use of the Premises
are Reasonable. ................................................................ 13

POINT III

PLAINTIFFS HAVE FAILED TO ADEQUATELY
ALLEGE ANY CLAIM SOUNDING IN
DISCRIMINATION UNDER THE NYCHRL ....................... 14

POINT IV

PLAINTIFFS CANNOT FORCE THE CITY TO
ADOPT PLAINTIFFS' VIEWPOINT AS THE
CITY'S OWN ......................................................................... 18

POINT V

    PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM ........................................................................ 21

POINT VI

    THE BALANCE OF THE EQUITIES LIES IN DEFENDANTS' FAVOR ...................................................... 23

CONCLUSION.................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Pages**

*795 Fifth Ave. Corp. v. New York*,
    15 N.Y.2d 221 (1965) ...................................................................................................14

*Basank v. Decker*,
    449 F. Supp. 3d 205 (S.D.N.Y. 2020)....................................................................3

*In re Bens BBQ, Inc.*,
    2020 U.S. Dist. LEXIS 119878
    (E.D.N.Y. 2020)......................................................................................................5

*Cartagena v. City of New York*,
    257 F. Supp. 2d 708 (S.D.N.Y. 2003).....................................................................5

*Matter of Carver v. New York*,
    26 N.Y.3d 272 (2015) ...........................................................................................13

*Cee-Jay Real Estate Dev. Corp. v. New York City Dep't of Parks & Recreation*,
    226 A.D.3d 774 (2d Dep't 2024) .......................................................................4, 14

*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*,
    561 U.S. 661 (2016)..............................................................................................19

*Cohen v. Lord, Day & Lord*,
    75 N.Y.2d 95 (1989) .............................................................................................13

*Corbett v. City of New York*,
    816 F. App'x 551 (2d Cir. 2020) ............................................................................5

*Matter of Eastern Pork Prods. Co. v. New York State Div. of Hous. & Community Renewal*,
    187 A.D.2d 320 (1992) .........................................................................................14

*Etienne v. MTA New York City Transit Auth.*,
    223 A.D. 612 (1st Dep't 2024) .............................................................................15

*Farmer v. Shake Shack Enters., LLC*,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020).................................................................15

*First v. Adams*,
    2022 U.S. App. LEXIS 14645
    (2d Cir. 2022)........................................................................................................18

*Goldin v. Engineers Country Club*,
    54 A.D.3d 658 (2d Dep't 2008) ...........................................................................17

| **Cases** | **Pages** |
|---|---|

*Goodwin v. Perales*,
   88 N.Y.2d 383 (1996) .................................................................13, 14

*Greystone Mgmt. Corp. v. Conciliation & Appeals Bd.*,
   62 N.Y.2d 763 (1984) ........................................................................4

*Home Team 668 LLC v. Town of E. Hampton*,
   2024 U.S. App. LEXIS 28733, 2024 WL 4764000
   (2d Cir. 2024) ....................................................................................4

*James McCrae v. City of New York, et al.*,
   Index No. 4403/16
   (Sup. Ct. Kings Cnty. 2016) ..............................................................4

*Matter of Juarez v. New York State Off. of Victim Servs.*,
   36 N.Y.3d 485 (2021) ......................................................................13

*Katz v. Flat Rate Long Distance, Inc.*,
   2022 N.Y. Slip Op. 32084(U)
   (Sup. Ct. New York Cnty. June 30, 2022) .......................................15

*Majewski v. Broadalbin-Perth Cent. School Dist.*,
   91 N.Y.2d 577 (1998) ......................................................................13

*Manhattan Cmty. Access Corp. v. Halleck*,
   587 U.S. 802 (2019)..........................................................................20

*Master Built Homes II Corp. v. New York City Dep't of Bldgs.*,
   220 A.D.3d 867 (2d Dep't 2023) ......................................................14

*McLaughlin, Piven, Vogel, Inc. v. Nolan & Co.*,
   114 A.D.2d 165 (2d Dep't 1986) ......................................................23

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
   375 F.3d 190 (2d Cir. 2004)................................................................3

*New York State Ass'n of Life Underwriters v. New York State Banking Dep't*,
   83 N.Y.2d 353 (1994) ......................................................................13

*Parker v. Blauvelt Volunteer Fire Co.*,
   93 N.Y.3d 343 (1999) ........................................................................4

*Pell v. Bd. of Educ.*,
   34 N.Y.2d 222 (1974) ......................................................................14

**Cases**                                                                                                                                                                           **Pages**

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009).................................................................................................18, 19

*Sportschannel Assoc. v. Sterling Mets, L.P.*,
    5 Misc. 3d 1029(A)
    (Sup. Ct. New York Cnty. 2004) ...............................................................................22

*St. Joseph Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*,
    131 F.4th 102 (2d Cir. 2025) .......................................................................................4

*Straka v. Lesbian Gay Bisexual & Transgender Cmty. Ctr., Inc.*,
    Index No. 155961/2019, 2020 N.Y. Misc. LEXIS 3083,
    2020 N.Y. Slip Op. 32116(U)
    (Sup. Ct. New York Cnty. July 1, 2020)...................................................................15

*Turley v. Giuliani*,
    86 F. Supp. 2d 291 (S.D.N.Y. 2000)............................................................................3

*U.S. v. O'Brien*,
    391 U.S. 367 (1968).....................................................................................................20

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015).....................................................................................................19

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989).....................................................................................................20

*Young v. New York City Tr. Auth.*,
    903 F.2d 146 (2d Cir. 1990)........................................................................................20

**Statutes**

42 U.S.C. § 1983.................................................................................................................4

N.Y.C. Admin. Code § 8-107(4)......................................................................................16

N.Y.C. Admin. Code § 8-107(4)(a).................................................................................15

N.Y.C. Admin. Code § 8-107(9)(a)(1).......................................................................15, 16

N.Y.C. Charter § 533.......................................................................................................14

N.Y.C. Charter § 854.......................................................................................................10

N.Y.C.R.R. § 6-07(c).........................................................................................................9

Defendants The City of New York (the "City"), the New York City Department of Parks and Recreation ("Parks"), NYC Parks GreenThumb ("GreenThumb"), and Carlos Martinez ("Martinez" and collectively, "Defendants") respectfully submit this memorandum of law in opposition to the motion of Plaintiffs Sunset Garden of Ridgewood, Inc. ("Sunset") and Indalesio Tellez ("Tellez" and collectively, "Plaintiffs") for a preliminary injunction, which seeks to enjoin Defendants from terminating its license to operate a community garden in Ridgewood, Queens (the "License").

## PRELIMINARY STATEMENT

Plaintiffs' case is nothing more than an attempt to rewrite history and cast themselves as the victims after they blatantly abused their License to operate a community garden to impose a political agenda on anyone accessing the garden. Through their "Community Agreements," Plaintiffs conditioned membership and admission to Sunset Garden on agreement with a laundry list of ideological and political views, including, among other things, agreeing that "Zionism" is a "form[] of hate," and that "perfectionism" is a "white supremacist value." Thus, rather than being victims of discrimination, Plaintiffs attempted to wield their License to operate the community garden to discriminate against others. Plaintiffs also refused to comply with the City's process to obtain approval for an art installation. After Defendants' reasonable attempts to resolve these issues with Plaintiffs, Parks terminated the License, to ensure that all members of the community would be welcome and able to use this publicly-owned land. Plaintiffs' motion must be denied and their challenge to the License termination dismissed because it is not properly before this Court and because even if it were, Plaintiffs fail to demonstrate any of the requirements for preliminary injunction. They cannot demonstrate a likelihood of success on the merits, that they would sustain irreparable harm from the termination, nor that a balancing of the equities weighs in their favor.

As an initial matter, Plaintiffs' request for a preliminary injunction is not properly before this Court because Plaintiffs may not challenge an administrative determination such as the revocation of a license except through an Article 78 proceeding filed in state court. In fact, Plaintiffs initially filed this action in state court, only to withdraw and refile in federal court when the state court rescinded its TRO, indicating it was not going to grant Plaintiffs' motion for a preliminary injunction. Plaintiffs' challenge to the termination of the License should thus be severed and dismissed, and if Plaintiffs wish to pursue it, they must do so in state court.

But even if this Court chooses to hear Plaintiffs' claims on the merits, their request for injunctive relief must fail. Plaintiffs cannot establish likelihood of success on their claims because their claims are based on Parks termination of their License to operate the garden, and the terms of that License foreclose any basis for the issuance of a preliminary injunction. The clear terms of the License permit Parks to terminate it at will in the Parks Commissioner's discretion and affords Plaintiffs no recourse whatsoever. Notwithstanding, termination of the License was justified, because Plaintiffs violated the terms of the License, City policy and regulations by requiring that prospective Garden members agree to certain political views as part of the application process. This requirement conveyed to potential members and visitors alike that certain people were not welcome in the Garden, and yet Plaintiffs now accuse Defendants of viewpoint discrimination. Plaintiffs also installed an art installation, the Cecelia Gentili Monument (the "Monument"), without prior approval, and refused to go through the temporary or permanent art approval process mandated by the License and applicable law. Plaintiffs offer no factual allegations (let alone evidence) to support their conclusory claims of discrimination, and the record before the Court clearly shows that Defendants' actions were rational. Indeed, absent from Plaintiffs' pleadings and motion papers is any denial that they violated the clear terms of the

License. Simply put, Plaintiffs have demonstrated that they cannot properly manage the Garden within reasonable conditions; accordingly, Plaintiffs' motion should be denied in its entirety.

## STATEMENT OF FACTS

The facts pertinent hereto are set forth in the accompanying Declaration of Carlos Martinez, Director of GreenThumb, dated September 11, 2025 (the "Martinez Decl."), the Declaration of Jennifer Lantzas dated September 11, 2025 ("Lantzas Decl.") and the exhibits thereto ("Exh."), to which the Court is respectfully referred.[1]

## STANDARD FOR INJUNCTIVE RELIEF

"A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (internal quotation marks omitted.). "[A] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Basank v. Decker*, 449 F. Supp. 3d 205 at 210 (S.D.N.Y. 2020) (internal quotation marks omitted). Where "the violation of a constitutional right is the irreparable harm asserted [], the two prongs of the preliminary injunction threshold merge into one: in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." *Turley v. Giuliani*, 86 F.Supp. 2d 291, 295 (S.D.N.Y. 2000). Notwithstanding, "[a] preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant, by a clear showing, carries the burden

---

[1] Unless otherwise noted, exhibit references refer to the exhibits annexed to the Martinez Decl. and Lantzas Decl.

of persuasion." *St. Joseph Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102 (2d Cir. 2025) (internal citations and quotation marks omitted).

As set forth below, Plaintiffs cannot meet this burden.

**POINT I**

**PLAINTIFFS' CHALLENGE TO THE TERMINATION OF THE LICENSE SHOULD BE DISMISSED BECAUSE PLAINTIFFS' SOLE AVENUE OF RELIEF IS AN ACTION IN STATE COURT PURSUANT TO ARTICLE 78 OF THE CPLR**

This case should be dismissed because Plaintiffs' claim is procedurally defective. It is well settled that a challenge of a discretionary administrative determination can only be brought in an Article 78 proceeding, not a plenary action. *Cee-Jay Real Estate Dev. Corp. v. New York City Dept. of Parks & Recreation*, 226 A.D.3d 774, 775 (2d Dep't 2024); *see also James McCrae v. the City of New York, et al,* Index No. 4403/16 (Sup. Ct. Kings Cty. 2016) (Toussaint, J.) (denying Article 78 petition challenging termination of a community garden license as rational based on "a history of violation of the terms of the license."). Moreover, the Court of Appeals has held that "a declaratory judgment action is not the proper vehicle to challenge an administrative procedure, where judicial review by way of article 78 proceeding is available." *Greystone Mgmt. Corp. v. Conciliation & Appeals Bd.*, 62 N.Y.2d 763, 765 (1984). Nor does the fact that Plaintiffs seek plenary relief preclude them from pursuing an Article 78 proceeding. *See Home Team 668 LLC v. Town of E. Hampton*, 2024 U.S. App. LEXIS 28733, 2024 WL 4764000 (2d Cir. 2024) (barring § 1983 action based on collateral estoppel because plaintiff had previously commenced Article 78 proceeding and could have pursued those claims in hybrid Article 78). Even where it is determined that proper relief cannot be granted pursuant to an Article 78 proceeding, a § 1983 claim can be severed from an Article 78 proceeding if necessary. *Parker v. Blauvelt Volunteer Fire*

*Co.*, 93 N.Y.3d 343 (1999). However, where claims could have been brought via a hybrid Article 78 proceeding and were not, *res judicata* comes into play. *Corbett v. City of New York*, 816 Fed. Appx. 551, 554-555 (2d Cir. 2020).

Moreover, this matter was initially commenced in New York State Supreme Court. The state court judge initially signed a temporary restraining order, but later vacated it *sua sponte* prior to the hearing on Plaintiffs' request for preliminary injunction. Seeing the writing on the wall that the court was not inclined to grant them preliminary relief, Plaintiffs withdrew the state court action and refiled before this Court.[2] Thus the Complaint , to the extent it challenges Parks' determination to terminate the License, should be dismissed, severed, and Plaintiffs should refile, if they choose, in New York State Supreme Court. *Cartagena v. City of New York*, 257 F.Supp. 2d 708, 710 (S.D.N.Y. 2003) ("State law does not permit Article 78 proceedings to be brought in federal court"); *In re Bens BBQ, Inc.*, 2020 U.S. Dist. LEXIS 119878 at *6 (E.D.N.Y. 2020) ("The overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so. . . . Distinct from the issue of subject matter jurisdiction, most district courts decline to exercise supplemental jurisdiction Article 78 proceedings in an exercise of discretion.") (internal citations omitted).

---

[2] A transcript of the proceedings on June 11, 2025 is annexed as Exh. K.

**POINT II**

**PARKS' REASONS FOR TERMINATING THE LICENSE WERE RATIONAL AND UNRELATED TO PLAINTIFFS' SPEECH OR ANY PROTECTED CHARACTERISTICS**

**A.  The Community Agreements**

Plaintiffs also cannot succeed on their claims because Section 7.E of the License provides that it is "terminable at will by the Commissioner in his or her discretion at any time, upon sixty (60) days written notice." Exh. A, Section 7E.

Moreover, even if cause were required, Parks had strong cause to terminate the License due to Plaintiffs' repeated violations of its terms. Section 5(B)(vi) of the license to operate the garden requires Licensee to "make membership of the Garden available to the public," and prohibits discrimination by Licensees "against any person because of race, creed, religion, color, national origin," and a series of other protected characteristics. Plaintiffs clearly violated these provisions by creating and publicizing Community Agreements requiring the public to agree to a laundry list of political positions as a condition of entry or membership, and by persisting in this course of action despite warnings and opportunities to cure presented by Parks. Their claims thus lack merit and cannot support a grant of injunctive relief. As set forth in the Martinez Decl., in September 2024, Parks was alerted to the creation and publication of "Community Agreements" which included positions and statements on religious, spiritual, political and philosophical beliefs, which Plaintiffs used as an ideological litmus test for potential members of the Garden. Martinez Decl. ¶ 7. The Community Agreements, which were pinned prominently at the top of Licensee's Instagram page and saved under a highlight containing information for visitors, required applicants to "[p]lease review the Community Agreements and confirm you align with and will honor them…" by clicking on a checkbox that stated "Yes, I will honor the community agreements."



The Community Agreements, a confusing and highly politicized document, included, *inter alia*, "commitments" characterizing "Zionist" beliefs as a "form[] of hate," to "challenge" to "white supremacist values of perfectionism," and a number of other ideological and political statements including characterizing the City land on which the garden is located as "stolen." Exh. B. The requirement that potential visitors agree to "honor the community agreements" was thus blatant viewpoint discrimination, signaling that members of the public whose beliefs did not align with those in the community agreements were not welcome in the garden. *Id*. GreenThumb informed the Licensee that the Community Agreements were not compatible with the requirement that community gardens have pathways for membership for all members of the public and that Licensee could not condition membership on acceptance of the Community Agreements. Exh. C. Sunset removed the mandatory checkbox on the online membership form but failed to remove the Community Agreements from their outreach materials, such as the Licensee's Instagram page and Linktree. *Id*. The Community Agreements themselves stated, "[a]ll members agree to uphold the following commitments in order to maintain

membership status" and their membership page stated, "[t]he Garden strives to have members that align with our Community Values and vison of the world we are building together." *Id.*

After repeated communications regarding the Community Agreements, by letter dated March 25, 2025, GreenThumb advised Sunset that the Community Agreements could not include statements on religious, spiritual, political or philosophical beliefs, as any such statements could be perceived as a prerequisite for members of the public visiting the Garden or planning to join the Garden group as a member. Parks requested that Sunset remove any reference to the "Community Agreements" while they worked collaboratively to resolve the issue and provided Sunset with three options for incorporating the values of *certain members* into the Garden program at the Premises without creating an ideological litmus test for visitation or membership.[3] Parks requested that Sunset inform Parks which option they preferred by April 1, 2025. *See id.* ¶ 11-13; Exh. E.

Plaintiff Sunset subsequently renamed the "Community Agreements" to "Community Values" but the document still required that all members agree to uphold the political and ideological commitments included in the "Community Values." Also, Sunset did not make clear that these values were held by certain members only, did not revise any of the political content, and did not remove the litmus test from its online membership form. Despite subsequent

---

[3] The first proposed option was for Sunset to remove all litmus tests or political prerequisites from the Community Agreements, to focus their content on matters related to community gardening. Sunset would have been permitted to mention the Agreements in Sunset's bylaws and consider them as part of their membership procedure. The second proposed option was to rename the Community Agreements to a statement of concerns held by certain members and make clear that membership is not contingent upon support of these beliefs. The statement of concerns was not to be referred to in Sunset's bylaws. The third proposed option was for members of the garden to create an independent affinity group who could use the Community Agreements as currently written, but Sunset would not use or reference the Agreements in their bylaws and affiliation with the affinity group would not be a requirement for membership in the Garden. *See* Martinez Decl. ¶ 11-13.

repeated warnings to Sunset that its continued failure to remove all references to the Community Agreements by the imposed deadline, and repeated extensions of that deadline, the ideological litmus test remained a condition of Garden membership.[4] *See* Martinez Decl. ¶ 13-15; *see also* Exh. F.

Plaintiffs' insistence upon an ideological litmus test for membership in the Garden violates the clear terms of the License. Section 5(B)(vi) states: "Licensee shall make membership of the Garden available to the public. Reasonable membership requirements, as determined by GreenThumb, shall be defined by each Licensee. Membership shall not be denied to any resident of the City of New York based upon any reason set forth in Section 6.H. herein or based on where a prospective member may reside in relation to the Garden." Plaintiffs clearly violated these provisions by creating and publicizing Community Agreements which, as written, required that the public pass an ideological litmus test for Garden entry or membership.[5] In other words, the Community Agreements improperly precluded members of the public with disagreeing political viewpoints from participating in a City gardening program which is meant to be open to all, and in effect, imposed Plaintiffs' own political viewpoints on those members of the public who wish to use and enjoy the Garden.

## B.     The Monument

Section 6-07(c) of the NYCRR states: "Any Garden must comply with all applicable federal, state, and local laws, rules, regulations, codes and ordinances and is subject to

---

[4] Plaintiffs' Instagram page is now private. Martinez Decl. ¶ 15. Contrary to Sunset's assertion that prospective members were required only to sign the Sunset Garden bylaws and rules, the "Community Values" stated that "All members agree to uphold the following commitments in order to maintain membership status."

[5]

the GreenThumb registration and License requirements and this chapter." In addition, section 5(B)(iii) of the License, entitled "Obligations of Licensee/Use of Premises" requires Plaintiffs to comply with Parks rules, regulations and guidelines, including the New York City Charter (the "Charter").

Charter section 854 provides, in pertinent part:

d. No work of art shall hereafter… be allowed to be placed on or extend into or over any public street, avenue, highway, square, park, dock or pier or other public place belonging to the city, unless such work of art or a design of the same, accompanied by a specification and an estimate of the cost thereof, a plan showing its proposed location, and, if the commission deems it necessary or desirable, also a model, and any other pertinent information as may be required by the commission including a plan in such detail as the commission[6] may require for the maintenance or conservation thereof, shall first have been submitted to the commission by the agency having jurisdiction, and such work of art or the design thereof, its location, and the plan for its maintenance or conservation, shall have been approved in writing by the commission. The commission shall have authority to bar final payment for the purchase or erection of any such work of art if the president or executive director of the commission certifies that the work of art has not been completed substantially in accordance with the approval of the commission.

[…]

g. Designs for all works of art or structures intended for temporary use in a fixed location during a period of more than one year, shall be subject to the same forms of procedure as those adopted for permanent use; but the approval of such designs shall be for a period to be determined by the commission, not to exceed three years, after which the commission shall either extend the period or order the removal of the work of art or structure.

Section 6(B) of the License, entitled "Restrictions on Licensee" states: "No permanent structures or murals or other permanent works of art may be built in the Garden without prior written

---

[6] In 2008, the New York City Public Design Commission replaced the Art Commission.

permission from GreenThumb and, where applicable, the New York City Department of Buildings and/or the New York City Public Design Commission." Exh. A.

As set forth in the Martinez Decl., in November 2024, Parks learned that Plaintiff Sunset erected a memorial known as the Cecilia Gentili Monument at the Premises. Parks advised Plaintiffs that they could keep the Monument up for thirty days, in accordance with Parks memorial policy. Plaintiffs responded that the Monument was a work of art created by several artists. In response, Parks advised Sunset that it was required to submit a temporary artwork proposal to be reviewed by Parks' Art & Antiquities Division.[7] Plaintiffs submitted their proposal in late January 2025. At GreenThumb's request, Art & Antiquities expedited its review of the proposal, waived the security deposit requirement and approved the proposal the day after it was submitted to Art & Antiquities. *Id.* ¶¶ 20-24; Exh. H.

On February 7, 2025, Parks sent Plaintiffs paperwork to complete the process, including a Public Art License Agreement and a certificate of insurance, which Sunset was required to sign for safety and liability purposes. Exh. G. Under these agreements, artwork may be displayed in a particular location for up to a year and can be displayed in a different borough for one additional year. Lantzas Decl. ¶ 3 and Exh. J. Sunset responded that it wanted the Monument featured permanently at the Premises without going through the approval process for either temporary or permanent artworks to be displayed on City property, contrary to the terms of the License and City policy. Exh. I. Parks proposed several other options that might help them find a permanent home for the artwork. *Id.* Parks repeatedly followed up with Plaintiffs and extended the imposed deadline to remove the Monument numerous times. *Id.* Sunset never signed the Public

---

[7] Parks' guidelines regarding temporary artworks are available online at Temporary Public Outdoor Art Guidelines : NYC Parks (last visited August 20, 2025).

Art License or removed the Monument from the Premises. *See* Martinez Decl. ¶ 25. Although other exhibitors and groups have erected artwork without first going through the approval process, Sunset appears to be the only group that has refused to cure such violation by signing a Public Art License Agreement. *See* Lantzas Decl. ¶ 7.

The only specific example Plaintiffs identify in support of their assertion that they were treated differently than others was "a much larger (approx. 7.5 x 5 ft) unlicensed, brightly painted art installation in the very same Garden that did not have an explicit QTBIPOC-affirming message" Complaint, ¶ 19. Although GreenThumb was aware of the existence of this woodcut, it did not consider the woodcut to be art requiring a Parks permit, and Plaintiffs never told GreenThumb or Parks that it considered this piece to be art. *See* Martinez Decl. ¶ 27. Art & Antiquities, the division responsible for evaluating whether a piece is considered art that requires approval, was not aware of the existence of the woodcut until Sunset raised the existence of the woodcut in Plaintiff's earlier state court action. Lantzas Decl. ¶ 10. It may not be considered art requiring a permit, given that it appears temporal in nature, akin to typical items displayed in gardens which do not require a permit (such as painted signs, painted raised garden beds, bird baths, garden gnomes and other mass-produced garden statuary). *Id*. However, given that Art & Antiquities was not aware of it until after the License was terminated, there was no need to investigate whether art approval was required for the woodcut. *Id*.

Moreover, neither the message conveyed by the Monument, nor the identities of the Plaintiffs had anything to do with Parks' requirement that the Monument be subject to a Public Art License Agreement. The fact that an artwork explores potentially controversial or political content is not a factor Art & Antiquities employs to determine whether something is considered art requiring approval or a license prior to being displayed in a park or community garden. Lantzas

Decl. ¶ 9. Indeed, in the last two years alone, Art & Antiquities has approved at several works of art displayed on City parkland which addressed Queer identity, racial identity and Black history. *Id*. Additionally, since May 2025, three artworks exploring Queer identity have been exhibited at various Parks locations and one artwork exploring Indigenous/racial identity and history is currently on display at a community garden in Manhattan. *Id*.

It is undisputed that Plaintiffs never requested (or received) written permission to install permanent artwork at the Premises in violation of the Charter, the NYCRR and the express terms of the License. Martinez Decl. ¶ 27. Furthermore, Plaintiffs failed to comply with Parks guidelines, which require artwork placed in Gardens be subject to the Public Art License Agreement, despite being given ample opportunity to sign an agreement. Lantzas Decl. ¶ 6. In fact, prior to the termination of the License, Art & Antiquities had approved the Monument to be displayed for up to a year in the Garden, but Plaintiffs refused to execute the Public Art License Agreement because they wanted it installed permanently. *Id*. ¶ 6.

## C.     The Conditions Set for the Use of the Premises are Reasonable.

The starting point for any statutory interpretation is the plain meaning of the language used. *Majewski v. Broadalbin-Perth Cent. School Dist.,* 91 N.Y.2d 577, 583 (1998). "Meaning and effect should be given to all language of a statute." *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 100 (1989). Courts will uphold an administrative agency's interpretation of the statutes and regulations it administers if that interpretation is reasonable and does not run contrary to the clear wording of a statutory provision. *See, e.g., Matter of Carver v. New York*, 26 N.Y.3d 272, 280 (2015); *Goodwin v. Perales*, 88 N.Y.2d 383, 392 (1996); *N.Y. State Ass'n of Life Underwriters v. N.Y. State Banking Dep't*, 83 N.Y.2d 353, 359–60 (1994). An agency's regulations will be upheld if they have a rational basis and are not arbitrary and capricious. *Matter of Juarez v. N.Y. State Off. of Victim Servs.,* 36 N.Y.3d 485, 492 (2021) (citation omitted).

Parks has jurisdiction to establish procedures with respect to the operation of gardens registered and licensed with GreenThumb. This broad authority clearly includes enforcing reasonable regulations and license requirements relating to the permanent display of art and policies which ensure that the gardens are open and welcoming to individuals from all different backgrounds and with differing political beliefs. *See generally* Charter §533; *795 Fifth Ave. Corp. v. New York*, 15 N.Y.2d 221, 225 (1965); *see also Master Built Homes II Corp. v. New York City Dept. of Bldgs.*, 220 A.D.3d 867, 872 (2d Dept. 2023), *citing Goodwin v. Perales*, 88 N.Y.2d 383 (1996); *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 N.Y.2d 222, 231 (1974); *Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal*, 187 A.D.2d 320 (1992) (affirming denial of Article 78 challenge to Parks' demand for tree restitution given that Parks has broad statutory authority to over trees in its jurisdiction and finding Parks' interpretation of relevant statutes and regulations it administers to be reasonable and rational); *Cee-Jay Real Estate Dev. Corp.*, 226 A.D.3d at 775 (upholding Parks determination requiring restitution for a street tree based upon its submission of a document setting forth reasonable policy).

Accordingly, the termination of Sunset's license was proper, reasonable and within Parks' discretion.

### POINT III

### PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE ANY CLAIM SOUNDING IN DISCRIMINATION UNDER THE NYCHRL

Under the New York City Human Rights Law ("NYCHRL"), it is "an unlawful discriminatory practice for any person who is the owner . . . of any place or provider of public accommodation . . . [b]ecause of any person's actual or perceived . . . gender identities, . . . sexual

orientation, . . . [or] race, . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." N.Y.C. Admin. Code § 8-107(4)(a). Similarly, under N.Y.C. Admin. Code § 8-107(9)(a)(1), it is unlawful "for an agency authorized to issue a license . . . to discriminate against an applicant . . ." based on those protected characteristics.

However, where a plaintiff fails to allege that the purported discrimination was based of one of the enumerated protected characteristics, dismissal of the claim is warranted. *Straka v. Lesbian Gay Bisexual & Transgender Cmty. Ctr., Inc.*, Index No. 155961/2019, 2020 N.Y. Misc. LEXIS 3083, *11-12, 2020 N.Y. Slip Op 32116(U), at *7-8 (Sup. Ct. N.Y. Cty. July 1, 2020) (dismissing discrimination claims under NYCHRL where defendants had objected not to plaintiffs' sexual or gender identities but to plaintiffs' political views). The Complaint makes conclusory and speculative allegations that Plaintiffs were treated less well than others but fails to set forth any facts whatsoever that support a conclusion that any of Parks' actions were motivated by discrimination. Plaintiffs also fail to submit any evidence that Parks had discriminatory intent in support of their motion seeking a preliminary injunction and offer no particularized allegations that any other *similarly situated individuals* were treated differently than Plaintiffs. *See Etienne v. MTA New York City Trans. Auth.*, 223 A.D. 612, 612-613 (1st Dep't 2024); *Katz v. Flat Rate Long Distance, Inc.*, 2022 N.Y. Slip. Op. 32084(U) at *5-6 (Sup. Ct., N.Y. County June 30, 2022) (granting motion to dismiss where plaintiff failed to plead facts showing similarly situated individuals were treated differently or that defendants had said or done something to evince discriminatory intent); *see also Farmer v. Shake Shack Enters., LLC*, 473 F.Supp. 3d 309, 330 (S.D.N.Y. 2020)("although the NYCHRL is broad, 'a plaintiff's 'mere subjective belief that he

was discriminated against because of his race does not sustain a race discrimination claim'") (internal citations omitted). Moreover, Plaintiffs' claims under the NYCHRL are specifically alleged under N.Y.C. Administrative Code ("N.Y.C. Admin. Code") 8-107(4), which applies only to "any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation" and N.Y.C. Admin. Code 8-107(9)(a)(1), which prohibits agencies from taking licensing actions based on protected characteristics. Plaintiffs' claim that a third-party complainant may have been motived by discrimination is not evidence that the City or its employees had the same such motivations, nor can that person's motivations be transferred to the City, as they are not covered by the NYCHRL causes of action alleged here.

As set forth above, Parks' decision to terminate the License had nothing to do with any of these characteristics; in fact, Parks' decision was motivated by its intent to ensure that the Garden is an inclusive environment and that individuals from all different backgrounds, including differing political beliefs, have the opportunity to become members of the Garden. Parks' written determination shows that the determination was made without regard to Plaintiffs' gender identities, sexual orientation, or race, and Plaintiffs have not submitted any evidence or factual allegations otherwise. Parks' requirement that Plaintiffs follow the procedures in place for the installation of art also does not evince any discriminatory intent – to the contrary, Parks has assisted Plaintiffs in ensuring compliance with regulatory requirements to allow the Monument to remain in the Garden, at least temporarily, to the extent permitted by applicable law. Exhs. D-E, G-H. Nor have Plaintiffs submitted evidence that the purported "selective enforcement" was at all related to protected characteristics. If anything, Plaintiffs' submissions show that Parks employees did *not* have a discriminatory motive. *See* Pl. Exh. A.

Additionally, the Complaint mentions the cancellation of a panel discussion at the "GrowTogether Conference." Plaintiffs allege that the panel was canceled because the "conference committee began 'micromanaging' the panel" – which, even if true, does not show any evidence of discrimination. Further, the email exchange attached to Plaintiffs' motion shows Maya Marie S., with Deep Routes, agreed with the decision to cancel the panel. Pl. Exh. I. Maya Marie's email makes clear that Maya Marie decided not to move forward,

> I was hoping to be following up about a prep call but unexpectedly the conference committee is operating in a direction that isn't in alignment with what I was envisioning for the panel, so unfortunately the session is being cancelled.

Pl. Exh. I. Maya Marie elaborates later in the chain,

> . . . I was beginning to get frustrated and feel icky about proceeding with the session for a number of reasons, but especially when the panel began to be micromanaged without reason. I don't know exactly what direction they were trying to go with this since it seemed like they were initially coming to me for direction, **I only have my speculations and concerns**.

Pl. Exh. I (emphasis added). Therefore, Plaintiffs have shown no evidence that Plaintiff Tellez was prevented from speaking on the panel because Parks engaged in discrimination. Plaintiffs have not sufficiently alleged any facts to support their conclusory claim for discrimination and cannot show a likelihood of success on the merits. *Goldin v. Engineers Country Club*, 54 A.D.3d 658 (2d Dep't 2008) (dismissing complaint for failure to plead facts demonstrating that different treatment on the basis of sex).

## POINT IV

### PLAINTIFFS CANNOT FORCE THE CITY TO ADOPT PLAINTIFFS' VIEWPOINT AS THE CITY'S OWN

Plaintiffs' First Amendment claim also fails, because 1) the Monument Plaintiffs seek to permanently install on the City's property constitutes government speech and is therefore not subject to the First Amendment's protections; and 2) Plaintiffs' "Community Agreements" are impermissible not because of their viewpoint, but because they impose Plaintiffs' position on the City and preclude members of the public with disagreeing viewpoints from participating in a City gardening program.

The First Amendment safeguards freedom of expression, but this protection is not absolute, particularly when it comes to speech on government property. *First v. Adams*, 2022 U.S. App. LEXIS 14645 (2d Cir. 2022) (affirming dismissal of complaint claiming First Amendment violation for City's refusal to allow mural paintings on public streets because such paintings constitute government speech not subject to First Amendment scrutiny). The Supreme Court has already decided very specifically that permanent memorials installed on government property are typically considered government speech. "Just as government-commissioned and government-financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land." *Pleasant Grove City v. Summum*, 555 U.S. 460, 470-471 (2009). The Court made clear that such permanent monuments are not subject to First Amendment scrutiny, stating:

> . . . [A]lthough a park[8] is a traditional public forum for speeches and other transitory expressive acts, the display of a permanent monument in a public park is not a form of expression to which forum analysis applies. Instead, the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause.

*Summum* at 464. Plaintiffs undisputedly seek to have the Monument permanently placed on the City's property – and is therefore government speech not subject to the First Amendment. [9] *Id.*

Even assuming *arguendo*, that the Monument were placed in a limited public forum—and it clearly is not—the City's regulation of the Monument still passes First Amendment muster, because the regulation of the Monument is reasonable and viewpoint neutral. *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 679 (2016) ("Recognizing a State's right "to preserve the property under its control for the use to which it is lawfully dedicated, the Court has permitted restrictions on access to a limited public forum . . . with this key caveat: Any access barrier must be reasonable and viewpoint neutral." [internal citations omitted]). The License expresses a viewpoint neutral prohibition on installing permanent art in the Garden without prior approval. *See* Exh. A License Section 6(B). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some

---

[8] Defendants do not contend that the Garden is a "park," but the same analysis applies as to the City's property for purposes of the First Amendment analysis.

[9] The Public Design Commission's approval process carefully curates the art that can be installed on City property for more than a year. A checklist describing the Public Design Commission's art approval process is located on its website. https://www.nyc.gov/assets/designcommission/downloads/pdf/checklists/PDC_Checklist_Artwork_Install.pdf (last visited September 9, 2025). That the City expresses its viewpoint through this forum supports the City's position that the permanent installation of the monument on City property is government speech. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015).

speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). This requirement applied to the Cecilia Gentili Monument not because of the viewpoint it purports to express, but by the virtue of the fact that it is art installed on City property, which pursuant to the City Charter, must go through an approval process. Plaintiffs contend that the City ignored other violations of the City's rules regarding such art installations, but offers no examples of similar *permanent* art installations being ignored.[10] Nor does Plaintiff offer any specific evidence to support that other art installations were ignored because of their viewpoint.

Moreover, while Plaintiffs are free to speak on their political beliefs, Plaintiffs cannot do so at the cost of stifling others by forcing them to agree to their politically-charged Community Agreements as a precondition to membership in a gardening program administered on City property. A municipality may limit a particular conduct such as speech in order to protect a "governmental interest… unrelated to the suppression of free expression." *Young v New York City Tr. Auth.,* 903 F.2d 146, 157 (2d Cir. 1990) (citing *U. S. v. O'Brien,* 391 U.S. 367, 382 (1968); 88 S. Ct. 1673 (1968)). In effect, *Plaintiffs* are the ones attempting to impose viewpoint discrimination on participation in the Garden, which is one of the key reasons Parks terminated the License. The City, by ensuring that others with divergent viewpoints can use the Garden, can hardly be culpable of viewpoint discrimination. Nor should Plaintiffs' attempt to limit membership be attributed to Parks. *Cf. Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019). Plaintiffs guise their claim as one that the City is not treating all viewpoints equally, but in reality, their grievance is that Plaintiffs' viewpoint is not the *only* one that is expressed at the Garden. Obviously, Plaintiffs have no such legal right. Parks has taken no position on the merit of Plaintiffs' beliefs espoused in

---

[10] Again, the fact that Plaintiffs seek a right to place the Monument *permanently* on City property places the analysis squarely under that of government speech.

their Community Agreements, and Plaintiffs may freely express them, with the caveat that Plaintiffs could not use them to prevent or discourage those who might disagree with those beliefs from fully participating in the Garden.

Nor was Parks' application of its policies unreasonable. Over the course of months, Parks attempted to work with Plaintiffs and suggested alternative ways that Plaintiffs could continue to speak their political beliefs without excluding those who disagree with Plaintiffs' message. In response, although Plaintiffs did make some modifications to their Community Agreements, they have continued to include language indicating that agreement with their political beliefs is preferred, "The garden strives to have members that align with our Community Values and vision of the world we are building together." These statements still lead the public to infer that members who do not "align" with the Community Values set forth by the Garden's current members are not welcomed, contrary to the mission of Parks as reiterated by the License's requirement that the Garden be open to the public. Parks' decision to terminate the License because of this impermissible restriction is not a restriction on Plaintiffs' speech, nor their particular viewpoint, but instead serves to ensure that Plaintiffs do not use City-owned property to ascribe their views to Parks and to discriminate against the viewpoints of others. Therefore, Plaintiffs cannot succeed on the merits of their First Amendment claim, and their request for a preliminary injunction must be denied.

## POINT V

### PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM

Plaintiffs cannot show by clear and convincing evidence that they will suffer irreparable harm absent an injunction. Indeed, if a preliminary injunction is issued, the public will be harmed because, through Plaintiffs' insistence on maintaining an ideological litmus test for

membership and their refusal to comply with regulations applicable to the display of art on public property, they have already demonstrated that they cannot properly manage the Premises. Any harm to Plaintiffs is attributable to their own failure to respond to GreenThumb's repeated attempts to collaboratively resolve the issues with Plaintiffs. In the absence of an injunction, Plaintiffs' speech rights will not be infringed. They will no longer be stewards of City-owned property, and will therefore be free to express any opinions they want within their group, and limit private membership if they so choose.

Moreover, Parks plans to find another community group to oversee the garden so it can be managed properly and be fully open to members of the public for their use and enjoyment, including Plaintiff Tellez and other current members. Martinez Decl. ¶ 29. Therefore, Plaintiffs' contention that it will "[lose] a vital community space" is conclusory and without merit. *See Sportschannel Assoc. v. Sterling Mets, L.P.*, 5 Misc. 3d 1029(A) (Sup. Ct. N.Y. County 2004) ("A plaintiff seeking a preliminary injunction must demonstrate that, without it, it faces immediate, real harm. Conclusory allegations of injury do not suffice.") (internal citations omitted).

Plaintiffs' attempts to ascribe third-parties' threats and harassment on internet websites to the City is simply illogical. Plaintiffs' speculation that these third-parties are "fomented" by the "City's actions and statements" is completely unsupported by any evidence of a causal connection or any reference to action by the City that caused these third-parties' behavior. For the avoidance of doubt, the City condemns threats of violence made against members of the Garden, and to the extent that any criminal activity is suspected, Plaintiffs are encouraged to report it to the NYPD. However, the threatening and otherwise inappropriate comments made on the New York Post's site have nothing to do with the City, and there is no indication that the requested

Preliminary Injunction would do anything to prevent those who oppose Plaintiffs staying in control of the Garden from exercising their ability to speak freely on a website the City does not control.

**POINT VI**

**THE BALANCE OF THE EQUITIES LIES IN DEFENDANTS' FAVOR**

In balancing the equities, "[It] must be shown that the irreparable injury to be sustained is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction." *McLaughlin, Piven, Vogel, Inc. v. Nolan & Co.*, 114 A.D.2d 165, 174 (2nd Dep't 1986). Here, Sunset held only a license, not a lease, to occupy the Premises for use as a community garden and it was not even required to pay any license fees to the City for its use of the Premises. Sunset acknowledged as much in Section 3 of the License, entitled "No Lease," which explicitly states: "It is expressly understood that the City has title to the Site and that no land, building, space or equipment is leased to the Licensee, but that during the time of this License, the Licensee shall be allowed the use of the Site as volunteer site stewards only as herein provided." Exh. A. Given Plaintiffs' lack of a property interest in the Premises and their repeated failure to cooperate with the reasonable conditions imposed on their use of the Premises, the balance of the equities clearly tips in Defendants' favor. It is evident that the public interest would be better served by having the garden operated by a new community garden group, which Sunset members including Plaintiff Tellez, would be permitted to join. *Id*. ¶ 29.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiffs' motion for a preliminary injunction in its entirety, and grant such other and further relief

as the Court deems just and proper.

Dated:      New York, New York
           September 11, 2025

                    MURIEL GOODE-TRUFANT
                    Corporation Counsel of the
                     City of New York
                    *Attorney for Defendants*
                    100 Church Street
                    New York, New York 10007
                    Tel.: (212) 356-2546 or 2521
                    bahlberg@law.nyc.gov
                    lspitaln@law.nyc.gov

              By:    _____
                    Blake Ahlberg
                    Leslie Spitalnick
                    Assistant Corporation Counsel