UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

SUNSET GARDEN OF RIDGEWOOD, INC., and
INDALESIO TELLEZ,

                                Plaintiffs,

          -against-

THE CITY OF NEW YORK, NYC DEP'T OF PARKS
AND RECREATION, NYC PARKS GREENTHUMB, and
CARLOS MARTINEZ, CHIEF OF STAFF OF NYC
PARKS GREENTHUMB,

                                Defendants.

----------------------------------------------------------------- x

**DECLARATION OF
CARLOS MARTINEZ**

Index No.: 25-cv-04258 (LDH)
(MMH)

       **CARLOS MARTINEZ** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

       1.     I am Chief of GreenThumb, a community garden program ("GreenThumb") of the New York City Department of Parks and Recreation ("Parks"). I have held this position since May 2021. From October 2015 until May 2021, I held the position of Deputy Director of GreenThumb.

       2.     I submit this declaration in opposition to the motion of Plaintiffs Sunset Garden of Ridgewood, Inc. ("Sunset") and Indalesio Tellez ("Tellez" and collectively, "Plaintiffs") for a preliminary injunction, which seeks to enjoin Defendants from terminating Sunset's license to operate a community garden in Ridgewood, Queens (the "License") on the premises located at 1808 Willoughby Avenue in Ridgewood, designated on the Tax Map of the

City of New York as Block 3418, Lot 1, Borough of Queens (the "Premises" or "Garden").[1] *See* Exhibit ("Exh.") A hereto. This affirmation is based on my own personal knowledge as well as the books and records of Parks and conversations with Parks employees.

3. GreenThumb is the nation's largest community gardening program, with over 550 community gardens across New York City. This program turns once vacant land in eligible areas into publicly accessible community gardens, urban farms and public spaces. GreenThumb provides support to thousands of volunteer gardeners throughout New York City. Among other duties, I direct the re-registration and licensing of the City's existing community gardens on land owned by the City of New York.

4. Plaintiff Sunset is a community garden group which held a community garden license issued by the City dated December 20, 2023 (the "License"). Plaintiff Tellez alleges that they are a licensee, director and lead gardener of Sunset, although Plaintiff Tellez is not a signatory on the License.[2]

5. By letter dated May 5, 2025, the City terminated the license pursuant to the License's termination clause, in which the City retains the absolute right to terminate the License at any time within its discretion. Exh. A, Section 7.

6. As discussed below, the termination of the License came after Plaintiffs repeatedly failed to comply with Parks' directions to appropriately and timely respond to numerous violations of the License.

---

[1] The Premises is under the jurisdiction of the New York City Department of Education, which has authorized use of the space as a GreenThumb garden in a Memorandum of Understanding with Parks.

[2] Even if Plaintiff Tellez were a signatory to the License, it would not make them a licensee, as the signatories to the License signed on behalf of the garden group and by definition, were not licensees. Exh. A (License §15.F.).

2

The Community Agreements

7. In September 2024, Parks was alerted to the creation and publication of "Community Agreements" which included positions and statements on religious, spiritual, political and philosophical beliefs and acted as an ideological litmus test for visitors and potential members of the Garden.[3] The Community Agreements, which were pinned prominently at the top of Licensee's Instagram page (which has since been made private), and saved under a highlight containing information for visitors, required applicants to "[p]lease review the Community Agreements and confirm you align with and will honor them..." by clicking on a checkbox that stated "Yes, I will honor the community agreements." *See* Exh. B.

8. As such, on September 30, 2024, GreenThumb informed Plaintiffs that the Community Agreements were not compatible with the requirement that community gardens have pathways for membership for all members of the public and they could not condition membership on acceptance of the Community Agreements. *See* Exh. C.

9. In response, Sunset removed the mandatory checkbox on the online membership form but failed to remove the Community Agreements from their outreach materials, such as the Licensee's Instagram page and Linktree.

10. GreenThumb repeatedly advised Plaintiffs that it was required to revise the Community Agreements for the garden to remain in good standing. *See* Exhs. C and D hereto.

11. By letter dated March 25, 2025, GreenThumb advised Sunset that while it supported Licensee's efforts to create a set of principles and statements to create a welcoming inclusive, and safe space for the Garden, the Community Agreements could not include positions

---

[3] The Community Agreements include, *inter alia*, a prohibition on Zionism, and a controversial position that seeking perfection is inherently white supremacist. Exh. A.

3

and statements on religious, spiritual, political or philosophical beliefs, as any such statements could be perceived as a prerequisite for members of the public visiting the Garden or planning to join the Garden as a member. *See* Exh. E hereto.

13. In this letter, GreenThumb requested that Sunset remove any reference to the "Community Agreements" while Sunset and Greenthumb worked collaboratively to resolve the issue and provided Sunset with three options for incorporating the values of certain members into the Garden program at the Premises without creating an ideological litmus test for membership. *Id.*

13. The first proposed option would require Sunset to remove all litmus tests or political prerequisites from the Community Agreements, to focus their content on matters related to community gardening. Sunset would be permitted to mention the revised Agreements in Sunset's bylaws and consider them as part of their membership procedure. The second proposed option would rename the Community Agreements to a statement of concerns held by certain members and make clear that that membership was not contingent upon support of these beliefs. The statement of concerns would not be referred to in Sunset's bylaws. The third proposed option would provide members of the garden an opportunity to create an independent affinity group who could use the Community Agreements as currently written, but Sunset would not use or reference the Agreements in their bylaws and affiliation with the affinity group would not be a requirement for membership. *Id.* GreenThumb requested that Sunset inform GreenThumb which option they preferred by April 1, 2025.

14. Sunset responded that it wished to proceed with GreenThumb's proposal that it rename the "Community Agreements" to "Community Values." Sunset subsequently

renamed the Community Agreements to Community Values but did not remove the litmus test from its online membership form.[4] *See* Exh. F hereto.

15. Despite subsequent repeated warnings in letters from GreenThumb dated April 3, 2025 and April 16, 2025, and in emails dated April 17 and 18, 2025, that Sunset's continued failure to remove all references to the Community Agreements by the imposed deadline, and repeated extensions of that deadline, the ideological litmus test remained a condition of Garden membership. *See* Exhs. G and H hereto and Plaintiffs' Exh. B, respectively.

16. Sunset's insistence upon an ideological litmus test for membership in the Garden violated the clear terms of the License. Section 6(H) states: "Licensee shall not unlawfully discriminate against any person because of race, creed, religion, color, national origin, ethnic origin, age, gender, sex, disability, marital status, or sexual orientation." Exh. A.

17. Additionally, Section 5(B)(vi) of the License states: "Licensee shall make membership of the Garden available to the public. Reasonable membership requirements, as determined by GreenThumb, shall be defined by each Licensee. Membership shall not be denied to any resident of the City of New York based upon any reason set forth in Section 6.H. herein or based on where a prospective member may reside in relation to the Garden." Sunset violated these provisions by creating and publicizing Community Agreements which, as written, acted as an ideological litmus test for potential members of the Garden. *Id*; *see also* Exh. I hereto.

18. Parks takes no position on the merit of the statements contained in Sunset's Community Agreements. However, the Garden is City property that is to be used by the public at large, and Sunset may not use its status as a licensee to enforce Community Agreements that

---

[4] https://docs.google.com/forms/d/e/1FAIpQLScOmNcLSnnWQW9rtXkud2ljJVG9RDLaIt8JVul HrcbeoTNCIg/viewform (last visited June 25, 2025).

5

prevent or dissuade others from membership or participation in the Garden if they do not agree with Sunset's views.

The Art Installation

19. Section 6(B) of the License, entitled "Restrictions on Licensee" states: "No permanent structures or murals or other permanent works of art may be built in the Garden without prior written permission from GreenThumb and, where applicable, the New York City Department of Buildings and/or the New York City Public Design Commission." Exh. A.

20. On November 25, 2024, GreenThumb learned that Sunset erected a memorial at the Garden. Accordingly, by email dated December 6, 2024, GreenThumb advised Sunset that it could keep the memorial up for thirty days, in accordance with Parks policy. *See* Exh. D.

21. By email dated December 9, 2024, Sunset responded that the installation was a work of art created by several artists. *See id.* In response, GreenThumb informed Sunset that it was required to submit a temporary artwork proposal to be reviewed by Parks' Art & Antiquities Division ("Art & Antiquities"). Thereafter, GreenThumb staff made multiple attempts to assist Sunset with completing the first component of its application.

22. Sunset eventually responded that it wanted the artwork featured permanently at the Garden. However, the License states that permanent art may only be placed on City property with the prior written approval of Parks, and City regulations require that any permanent art be approved by the New York City Public Design Commission, which I understand is a thorough and detailed process. GreenThumb proposed several other options that might help Sunset find a permanent home for the artwork and extended the imposed deadline to remove the artwork numerous times.

23. Sunset finally submitted a temporary artwork proposal to Art & Antiquities in early February 2025. Under these agreements, artwork may be displayed in a particular location for up to a year and can be displayed in a different borough for one additional year. Sunset provided a revised proposal on February 6, 2025, and at GreenThumb's request, Parks expedited its review of the proposal and waived the security deposit requirement. *See* Exh. H. Art & Antiquities approved the proposal on February 7, 2025. However, certain items were still not provided by Sunset, including a signed Public Art License Agreement and a certificate of insurance, which Sunset was required to provide for safety and liability purposes. *See* Exh. E.

24. GreenThumb contacted Sunset by letter on March 25, 2025 to request that Sunset provide the outstanding items to Art & Antiquities. *See id.* Sunset failed to comply with these necessary requirements notwithstanding GreenThumb's assistance. *See* Exh. H.

25. By letters dated April 3, 2025 and April 16, 2025, GreenThumb informed Sunset that it was in violation of the License by failing to remove the artwork from the Garden and requested that Sunset sign the Pubic Art License Agreement (annexed hereto as Exh. J) and provide a certificate of insurance within a week's time. Sunset eventually provided the certificate of insurance but never signed the Public Art License Agreement despite numerous requests by GreenThumb, because Sunset wanted the artwork displayed permanently would not accept an agreement for the temporary display of the art. Accordingly, by letter dated May 5, 2025, Parks terminated the License. *See* Exh. I.

26. In their Complaint, Plaintiffs assert that Defendants did not object to "a much larger (approx. 7.5 x 5 ft) unlicensed, brightly painted art installation in the very same Garden that did not have an explicit QTBIPOC-affirming message" Complaint, ¶ 19.

27. Although GreenThumb was aware of the existence of this woodcut, it did not consider the woodcut to be art requiring a Parks permit, and Plaintiffs never told GreenThumb or Parks that it considered this piece to be art. It is undisputed that Sunset never requested (or received) written permission to install permanent artwork at the Garden – whether the memorial or the woodcut, in violation of the Charter, the NYCRR and the express terms of the License. Furthermore, Sunset failed to comply with Parks guidelines, which require artwork placed in Gardens be subject to the Public Art License Agreement, despite being given ample opportunity to sign it or remove the artwork.

28. The need for the removal of Sunset's artwork is necessitated by Sunset's failure to comply with the License and City regulations with regard to art installations on City property and has nothing to do with the content or message it conveys, or the identities of the individuals who are members of Sunset.

The Future of the Community Garden at the City's Premises

29. Contrary to Plaintiffs' allegations, Parks' decision to terminate the License had absolutely nothing to do with Sunset's members' actual or perceived gender, sexuality, or race. Parks plans to find another community group to manage the community garden, to be managed properly by residents of the community and open to the neighborhood for its use and enjoyment. Parks prohibits discrimination in community gardens, and does not intend on denying anyone, including Plaintiff Tellez or other Sunset members, the opportunity to garden at the Premises or to become members of a new garden group, even though they have prevented others from fully enjoying the Garden. When a new group is granted a license, however, Parks would require that the new garden group elect new liaisons to be the primary contacts with Parks and GreenThumb.

Date: New York, New York
September 11, 2025

Respectfully submitted,

_____
CARLOS MARTINEZ