UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

SUNSET GARDEN OF RIDGEWOOD, INC., and
INDALESIO TELLEZ,

         Plaintiffs,

-against-

THE CITY OF NEW YORK, NYC DEP'T OF PARKS
AND RECREATION, NYC PARKS GREENTHUMB, and
CARLOS MARTINEZ, CHIEF OF STAFF OF NYC
PARKS GREENTHUMB,

         Defendants.

------------------------------------------------------------------- x

**DECLARATION OF JENNIFER LANTZAS**

Index No.: 25-cv-04258 (LDH) (MMH)

    **JENNIFER LANTZAS** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.  I am the Deputy Director of the Art & Antiquities Division ("Art & Antiquities") of the New York City Department of Parks and Recreation ("Parks"). I have worked in Art & Antiquities since 2009, as Public Art Coordinator until 2016, and then as Senior Public Art Coordinator until I became Deputy Director on June 16, 2019. I am familiar with the facts and circumstances set forth in this Declaration, based upon my personal knowledge and a review of the books and records maintained by Parks. I submit this declaration in opposition to the motion of Plaintiffs Sunset Garden of Ridgewood, Inc. ("Sunset") and Indalesio Tellez ("Tellez" and collectively, "Plaintiffs") for a preliminary injunction, which seeks to enjoin Defendants from terminating Sunset's license to operate a community garden in Ridgewood, Queens (the "License").

    2.  The Art & Antiquities Division is responsible for overseeing, reviewing and approving temporary art displayed on City-owned parkland and in community gardens within

Parks' jurisdiction. Since its creation in 1967, Parks' art program has displayed more than 3,000 works of outdoor public art across New York City.

3. For art to be displayed temporarily on City-owned land, here, a community garden, the artist or garden group must first obtain a permit from Art & Antiquities by submitting a temporary artwork proposal to be reviewed by Art & Antiquities and the artwork may only be exhibited temporarily (up to one year).[1] For an artwork to be displayed permanently, it is subject to a thorough review process through the Public Design Commission. The permanent display of memorials on City-owned land are governed by additional requirements.[2] When reviewing a proposal for a permanent memorial, Parks considers factors including the length of time the individual being memorialized has been deceased, (Parks recommends that the individual have been deceased for a minimum of five to 10 years) to provide time for historical perspective of the individual's contributions to society, among other things.[3] From time to time, members of the public erect memorials on Parks property. Parks allows these memorials to be displayed temporarily for up to thirty days.

---

[1] Parks' guidelines regarding temporary artworks are available online at Temporary Public Outdoor Art Guidelines : NYC Parks (last visited September 9, 2025).

[2] Parks' guidelines regarding permanent artworks are available online at Guidelines for Donating Works of Art to Parks : NYC Parks (last visited September 9, 2025).

[3] According to the PDC website, '[t]he Public Design Commission supports the installation of monuments or memorials to commemorate people, places, and events significant to New York City's history. The PDC discourages monuments/memorials for people, places, and events that have been recognized as significant for a period of less than 20 years, unless they are of exceptional importance. Monuments to living persons will not be considered. A professional historian with expertise on the subject must provide a written statement establishing the significance of each subject and thoroughly vet any proposed text and images." Guidelines for Monuments and Memorials (last visited September 9, 2025).

4. In late 2024, Art & Antiquities was made aware by GreenThumb, Parks' community garden program ("GreenThumb"), that Sunset, a licensee operating a community garden on City-owned property in Ridgewood, Queens had erected what the group referred to as the Cecelia Gentili Monument (the "Monument") in the garden, and that members of the group informed Parks that Sunset intended for the Monument to remain in the garden permanently. Sunset had not received approval for a permanent artwork, nor had it submitted a temporary art proposal to be reviewed by Art & Antiquities before erecting the Monument.

5. In January 2025, Sunset submitted a temporary art proposal to Art & Antiquities, which it subsequently revised. Art & Antiquities received a revised proposal on February 6. Art & Antiquities expedited its review of the proposal and waived the security deposit requirement.

6. On February 7, 2025, Parks notified Plaintiffs that their proposal was approved and sent Plaintiffs paperwork to complete the review process, including a Public Art License Agreement and a sample certificate of insurance, which Sunset was required to sign to for safety and liability purposes. Sunset also provided a certificate of insurance. However, Sunset never signed the Public Art License and has not removed the Monument from the garden. Had Sunset signed this agreement, the Monument would have been permitted to remain at the Garden for an additional year commencing on the date of the execution of the art agreement, at which point the Monument could be moved to a different location in another borough to be displayed for one additional year.

7. This was not the first time that an exhibitor or a group had displayed an artwork on Parks' property without first going through the approval process, however, to the best

of my knowledge, Sunset is the only group that has entirely refused to sign the Public Art License Agreement or collect the artwork.

8. Sunset's claim that Parks' efforts to have the Monument brought into compliance with Parks' rules governing art was pretextual or motivated by a desire to censor their expressive speech is categorically false. Art & Antiquities approved the Monument after Plaintiffs submitted the required documentation and the only remaining barrier to its continued display in the garden for an additional year was Plaintiffs' own refusal to sign the Public Art License Agreement.

9. Moreover, Parks' need for a signed Public Art License Agreement and a certificate of insurance is entirely unrelated to the content of the Monument. All art displayed on property managed by Parks must be approved, and Art & Antiquities requires community gardens to obtain approval for such art whenever Art & Antiquities becomes aware that art is displayed in a community garden. When reviewing an artwork, Art & Antiquities takes numerous things into account when determining whether it constitutes art, including the temporal nature of a piece, the intent of the maker and any safety hazards the artwork potentially poses by its public display. As it relates to the Monument, the content or viewpoint of the Monument was not a factor in determining that it was art that must be approved to be placed in a community garden. Indeed, in the last two years alone, Art & Antiquities has approved at least fifteen works of art displayed on City parkland which addressed queer identity, racial identity, and Black history. Additionally, since May 2025, three artworks exploring Queer identity have been exhibited at various Parks locations and one artwork exploring Indigenous/racial identity and history is currently on display at a community garden in Manhattan. Parks does not make requirements for the display of art any

4

different if that art expresses viewpoints that support the rights of those who are Trans, Queer, Black, Indigenous, and people of color.

10. Sunset's claim that they have been treated differently than other similarly situated garden groups is meritless. The only specific example Plaintiffs identify in support of their assertion that they were treated differently than others is "a much larger (approx. 7.5 x 5 ft) unlicensed, brightly painted art installation in the very same Garden that did not have an explicit QTBIPOC-affirming message" Complaint, ¶ 19. Art & Antiquities was not aware of the existence of the woodcut until Sunset raised the existence of the woodcut in the earlier state court action brought by Plaintiffs. If Art & Antiquities had become aware of the woodcut prior to the termination of Sunset's License, it would have reviewed whether the woodcut was required to be approved as artwork, just as it did with the Monument. In any event, Art & Antiquities' understanding is that the woodcut is not affixed to anything and is temporal in nature, akin to typical items displayed in gardens which do not require a permit such as painted signs, painted raised garden beds, bird baths, garden gnomes and other mass-produced garden statuary.

Dated:   New York, New York
         September 11, 2025

Respectfully submitted,

_____
JENNIFER LANTZAS