## SECOND AFFIDAVIT OF INDALESIO TELLEZ

I, INDALESIO TELLEZ, being duly sworn, depose and say:

1. I am a plaintiff in this action. I am a garden steward of Sunset Garden of Ridgewood, Inc. ("the Garden"). I make this affidavit based on my personal knowledge and information and belief.

2. I submit this affidavit in support of Plaintiffs' motion for a Preliminary Injunction to prevent the imminent and irreparable harm that will occur if Defendants are permitted to proceed with terminating the Garden's license and seizing the premises.

3. The City callously suggests that we contact the NYPD to report the death threats we have received. As previously stated in my first Affidavit, 11, we told GreenThumb about this harassment and requested protective support on April 11, 2025 in our recorded in-person meeting with Carlos Martinez and other GreenThumb leadership. The City did nothing to protect us and only escalated its discriminatory campaign, including against the Community Values which were meant to protect against exactly this type of violent behavior, signaling clearly to the public that they condone it and will do nothing to prevent it without being held accountable.

4. Furthermore, we have reason to believe that the NYPD will only harm or, at best, ignore us, as it has shown up several times to harass and intimidate us, including on our Pride Month Kickoff June 1st of this year, illegally parking squad cars in a crosswalk, with officers interrogating our stewards about whether we had a license for our garden hose (we did). The NYPD also sent an unmarked car (license plate JHN-6735) with two officers to surveil the garden three days later on June 4, 2025 at 6:30pm, and they left

1

only upon my vehemently requesting that they do so. We also have reason to believe that Queens Police Officer Shawn Phillips (Badge Number 2189) has been posting false, defamatory, and inflammatory statements online about the Garden, calling us "communists" and claiming we are "using taxpayer dollars to fund" our lawsuit, when in fact our attorneys are representing us pro bono and we are paying for fees out of pocket.

5. The Garden wanted to keep the collaboratively made and ever-changing altar to Cecilia as long as we stewarded the garden in the same manner that all other gardens are able to with their installations, not necessarily 'permanently,' as the City claims, except as the only alternative to their insulting proposals. The altar *itself* is impermanent and acts as a trellis supporting changing and growing plants, with members of the public and the Garden continually adding their own special tributes to it–flowers, pictures, and messages, for example. We only asked about the process for permanent installation because the other options provided to us (absurdly, moving the altar to another borough, away from the neighborhood Cecilia lived in and away from the people who made it intentionally for this garden) were unfair and totally inappropriate. This is particularly in light of the facts that the City could not produce a single example of this rule being applied to other Gardens, their total unresponsiveness to our repeated questions regarding what qualified as a "large" art installation under the GreenThumb Handbook (which is hammered into us as the rules to follow, and are specific to community gardens), and our wanting to keep close this important, deeply meaningful homage to someone who has impacted so many of us so profoundly.

6. The City again argues that our Values statements were exclusionary, but we have not excluded or removed anyone from membership and the statements were intended to be

2

things we all as a group consented to and thought were important to affirm for our safety, growth, and inclusiveness. We made it extremely clear that all were welcome and that the Values were an evolving document subject to feedback from both members and non-members if they wanted to provide it to us. We were also under the impression that we were meeting the City's shifting requirements with regard to the Values given the City's affirmations via email and assurances that the Values would remain.

7. Our online membership form also clearly states "All members of the public are welcome. Anyone can come into the garden during open hours-you do not need to be a member." We state that "Garden Stewards will intervene in discriminatory or violent actions, harassment, or threats contrary to its Code of Conduct," which are not part of the Community Values. We ask prospective members to "please take a moment to read our Community Values."

8. Prior to our termination, the Values statements also clearly stated "This is not the space to shame or bully anyone based on identities or appearances," "We understand that conflict will arise when building an intentional community, and that meeting it with respect and restorative practices will benefit us all." We stated that "With belonging as a core value we strive to foster a feeling of security and support when there is a sense of acceptance, inclusion, and purpose for all members." We stated that "Equity in accessibility is an important value for us to keep in mind as we share space in the garden" and prompted each other to ask "how is my presence here inviting and welcoming to others? Am I taking up space in a way that makes it easy for others to feel included? Can I facilitate access for others through my own access and/or privilege?"

9. Prior to filing this lawsuit, in accordance with the City's wishes and in order to protect this sacred space against termination, we deleted the term "Zionist," even though we all understood Zionism as one form of discrimination listed among many that we had a right to say we intervene in as a matter of practice.

10. In good faith and in an effort to keep this critically important garden and its community intact, we have added yet more sentences making crystal clear that "These Values statements are self imposed and mutually agreed upon by consensus and are subject to change and feedback from both prospective and current members. They do not prohibit or discourage anyone, of any identity, from joining or remaining in the Garden or expressing different viewpoints, who does so without illegally harassing, threatening, or discriminating against others."

11. We have also removed the freshly complained-of sentence "All members agree to uphold the following commitments in order to maintain membership status" (although the City appeared to have accepted our changes before and we maintain that we can consensually agree to our own self-imposed standards and that prohibiting us from doing so is a violation of our freedoms of expression and association). We have deleted the phrase "white supremacist values of" before "perfectionism" because of the City's objections to them. We reiterate as is already stated in our bylaws that all members of the public are welcome and that we will engage with different viewpoints respectfully. We remain committed to interrupting harmful, discriminatory behavior.

12. The current copy of our Community Values statement can be found here: https://docs.google.com/document/d/10ifvn2jCwFoYPAuxNc4WVYcQ6xRZuf1t3FEUu1E0FUs/

13. While the prior lawsuit before Judge Kingo was pending, the Garden authorized our attorneys to negotiate a settlement of the case by making changes to the Community Values document and agreeing to continue applying for permission to maintain the altar. The City seemed amenable to a settlement and indicated that it intended for the Garden to remain, and we were working on the final terms, including making some of the changes that we made prior to filing this lawsuit.

14. We were very surprised, and so, we soon found out, were our lawyers, when Judge Kingo stated, in open court and on the record, that he refused to so order a settlement, and made the suggestion that we voluntarily dismiss our case and then proceed to work out whatever resolution was available with the City without involving him.

15. At each of the appearances we made, the New York Post had a reporter in the courtroom, and the paper ran at least seven malicious articles, typically referring to us the "Garden of Hate." After Judge Kingo earlier decided to grant the Temporary Restraining Order, the Post on June 7, 2025 quoted a New York resident totally uninvolved with the Garden calling Justice Kingo "ludicrous." (Exh. S).

16. Despite having initially granted the Restraining Order, after facing public criticism, Judge in our opinion made certain that the parties would be unable to settle the case on consent, while it was pending before him, by then issuing a gratuitous order directing us all to appear before even signing a private settlement, not so ordered by him, to make various

presentations justifying plaintiffs' claims and the defendants' acceptance of the settlement. Certainly, the Post would have eagerly attended that court date. Predictably, however, and without explanation the City then backed out of the already negotiated settlement. At that point, we dismissed our case as of right and refiled in federal court, believing that we were not receiving due process or equal protection from Judge Kingo.

17. Mayor Eric Adams also used the authority of his office to falsely claim that we "barred some of [our] fellow New Yorkers" from the Garden. Discovery is likely to show communications from him and others in authority exercising their great political power to censor and chill a small community garden in Queens. (Exhibit O).

18. We believe that the city was under tremendous internal and pressure both to censor our speech and to discriminate against us as trans people, immigrants, and pro-Palestinian activists, and cravenly gave in.

19. Our attorneys inform me that typically, parties are not permitted to offer settlement communications as proof in cases, but that in their opinion, we are subject to an exception, and may speak on these matters to show the City's bad faith towards us (in this case, giving in to external pressure to infringe our rights).

20. We remain eager to settle on terms similar to those previously negotiated, and hope that your Honor will consider assigning the Magistrate to meet with the parties to supervise continued discussions (or of course, doing so yourself).

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

*Indalesio Tellez*
------------------------------  Date: September 18, 2025

   Indalesio Tellez